**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| **MIGUEL ACOSTA,** § | |
| § | |
| *Plaintiff*, § | |
| v. § | |
| § | **EP-22-CV-00417-ATB** |
| **KILOLO KIJAKAZI,** *Acting* § | |
| *Commissioner of Social Security* § | |
| *Administration*, § | |
| § | |
| *Defendant.* § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Pursuant to 42 U.S.C. § 405(g), Plaintiff Miguel Acosta, the claimant at the administrative level, appeals from the final decision of Defendant Acting Commissioner of the Social Security Administration ("Commissioner") denying his claims for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1382, *et seq.* Pursuant to 28 U.S.C. § 636(b), the Honorable Senior District Judge Frank Montalvo referred the case to the undersigned Magistrate Judge for a report and recommendation, and subsequently, the parties consented to have the undersigned judge decide the case and enter final judgment. For the reasons set forth below, the Court finds that the Commissioner's decision should be affirmed.

### I. BACKGROUND

On September 16, 2020, Acosta applied for SSI benefits. He alleged that he became disabled on September 16, 2020, due to attention deficit hyperactive disorder ("ADHD") and

anger issues.[1]  He was eighteen years old when he applied for benefits.[2]  He completed the ninth grade of school and never held a job.[3]

His claim for benefits was denied initially on February 9, 2021, and upon reconsideration on May 24, 2021.[4]  Thereafter, Acosta requested a hearing by an administrative law judge ("ALJ").[5]  On February 16, 2022, ALJ Marty Turner held a hearing, where Acosta, represented by his attorney, and a vocational expert testified.[6]  On March 14, 2022, ALJ Turner issued his written decision in which he denied Acosta's application finding that he was not disabled.[7]  On September 7, 2022, the Appeals Council denied Acosta's request for review of the ALJ's decision;[8] the ALJ's decision thus became the final decision of the Commissioner.[9]

On November 9, 2022, Acosta brought this action seeking judicial review of the Commissioner's final decision.  On March 22, 2023, he filed an opening brief requesting that the Commissioner's decision be reversed and his claim be remanded for further administrative consideration.  Pl.'s Br. at 17, ECF No. 13.  On April 5, 2023, the Commissioner filed a response

---

[1] Tr. of Admin. R. [hereinafter, cited as "Tr."] at 40, 208, 235; Pl.'s Br. at 3.

[2] *Id.* at 208.

[3] *Id.* at 42–43.

[4] *Id.* at 93, 106.

[5] *Id.* at 108.

[6] *Id*. at 37–38.

[7] *Id.* at 30.

[8] *Id.* at 7.

[9] *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002) ("The ALJ's decision thus became the Commissioner's final and official decision when the Appeals Council denied [the claimant's] request for review on the merits.").

brief. Def.'s Resp. Br., ECF No. 17. Acosta filed a reply brief on April 14, 2023. Pl.'s Reply Br., ECF No. 18.

## II.   ALJ'S FINDINGS AND CONCLUSIONS

Eligibility for supplemental security income payments requires that the claimant be disabled. 42 U.S.C. § 1382(a). Disability is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 1382c(a)(3)(A). "A claimant has the burden of proving he suffers from a disability." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018).

To determine disability, the Commissioner uses a sequential, five-step approach, which considers:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017) (cleaned up); *see also* 20 C.F.R. § 416.920(a)(4).[10] "The burden of proof is on the claimant at the first four steps," *Kneeland*, 850 F.3d at 753, and if he gets past these steps, "the burden shifts to the Commissioner on the fifth step to prove the claimant's employability," *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A determination at any step that the claimant is disabled or is not disabled "ends the inquiry." *Id.*

---

[10] "'The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits [under Title II of the Act] are identical to those governing the determination under a claim for supplemental security income [under Title XVI of the Act].'" *Undheim v. Barnhart*, 214 F. App'x 448, 449 n.1 (5th Cir. 2007) (quoting *Davis v. Heckler*, 759 F.2d 432, 435 n. 1 (5th Cir. 1985)). Part 404 of 20 C.F.R. relates to disability insurance benefits, *see* 20 C.F.R. § 404.1, whereas Part 416 relates to supplemental security income, *see* 20 C.F.R. § 416.101. Therefore, the Court will rely on caselaw applying either Part 404 or Part 416 regulations as applicable.

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity ("RFC"). *Kneeland*, 850 F.3d at 754. "The claimant's RFC assessment is a determination of the most the claimant can still do despite his or her physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id.* (cleaned up); *see also* 20 C.F.R. § 416.945(a)(1). "The RFC is used in both step four and step five to determine whether the claimant is able to do h[is] past work or other available work." *Kneeland*, 850 F.3d at 754; *see also* 20 C.F.R. § 416.920(e).

Here, ALJ Turner evaluated Acosta's disability claim pursuant to the above-mentioned sequential evaluation process. At step one, the ALJ found that Acosta had not engaged in substantial gainful activity since September 16, 2020 (his alleged disability onset date). Tr. at 23. At step two, the ALJ found that Acosta had the following severe impairments: bipolar/mood disorder, intermittent explosive disorder, ADHD, intellectual disorder, and seizure disorder. *Id.* at 24. At step three, the ALJ found that Acosta did not have an impairment or combination of impairments for presumptive disability: specifically, Acosta did not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, including Listings 11.02 (epilepsy), 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar and related disorders), 12.05 (intellectual disorder), and 12.08 (personality and impulse-control disorders). *Id.* at 24–26.

Next, the ALJ found that Acosta retained the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: he cannot tolerate exposure to workplace hazards or unprotected heights; he can understand, remember and carry out simple work instructions; [and] he can tolerate occasional changes in work settings[] [and] occasional interactions with the general public[,] coworkers[,] and supervisors.

*Id.* at 26. At step four, he found that Acosta has no past relevant work. *Id.* at 29. At step five, the ALJ found, relying on the vocational expert's testimony, that, considering Acosta's age,

education, work experience, and RFC, jobs existed in significant numbers in the national economy that Acosta could perform, including the jobs of battery stacker (DOT No. 727.687-030), lining inserter (DOT No. 732.687-042), and crate liner (DOT No. 920.687-078). *Id.* at 29. He concluded that Acosta had not been under a disability since September 16, 2020 (the alleged disability onset date) through March 14, 2022 (the date of the ALJ's decision).[11] *Id.* at 30.

### III. STANDARDS FOR JUDICIAL REVIEW

Judicial review, under § 405(g), of the Commissioner's decision denying social security benefits is "highly deferential." *Garcia*, 880 F.3d at 704. Courts review such a decision "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (quotation marks and citation omitted). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015).

In applying the "substantial evidence" standard, "the court scrutinizes the record to determine whether such evidence is present," *id.*, but it may not "try the issues *de novo*" or "reweigh the evidence," *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "[N]or, in the event of evidentiary conflict or uncertainty," may the court substitute its judgment for the Commissioner's, "even if [it] believe[s] the evidence weighs against the Commissioner's decision." *Garcia*, 880 F.3d at 704. "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Sun*, 793 F.3d at 508. "A finding of no substantial evidence is appropriate

---

[11] The relevant disability period for a Title XVI SSI claim is the disability onset date through the date of the ALJ's decision. *Hamilton-Provost v. Colvin*, 605 F. App'x 233, 237 n.5 (5th Cir. 2015).

only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016).

## IV. DISCUSSION

On appeal, Acosta principally argues that the ALJ erred by failing to properly evaluate both "supportability" and "consistency" of all the prior administrative medical findings of three state agency medical and psychological consultants—namely, James Brown, Ph.D., Stephen Drake, Ph.D., and Patty Rowley, M.D.—in contravention of 20 C.F.R. § 416.920c. Pl.'s Br. at 6; Pl.'s Reply Br. at 4. These consultants reviewed the case record as of the date of their respective reviews and based on the reviews, provided their findings about Acosta's physical and/or mental limitations. Acosta adds that the ALJ's error cannot be said to be harmless. Pl.'s Br. at 15.

An ALJ is required to "articulate in [his] . . . decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings" in the case record. 20 C.F.R. § 416.920c(b). Section 416.920c sets forth several factors for determining the persuasiveness of such opinions and findings. *Id.* §§ 416.920c(c)(1)–(5). "[T]he most important factors" are "supportability" and "consistency." *Id.* § 416.920c(b)(2). "Supportability" means the extent to which a provider supports his medical opinion or prior administrative medical finding by "relevant . . . objective medical evidence and . . . explanations," whereas "consistency" means the extent to which the medical opinion or finding is "consistent with the evidence from other medical sources and nonmedical sources'" in the record. *Id.* § 416.920c(c)(1)–(2).[12] In his decision, the ALJ must "explain how [he] considered the

---

[12] *See also Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023) ("Supportability is the degree to which a provider supports their opinion with relevant, objective medical evidence and explanation, and consistency is the degree to which a provider's opinion is consistent with the evidence of other medical and non-medical sources in the record." (citing 20 C.F.R. § 404.1520c(c)(1)–(2))).

supportability and consistency factors for a medical source's medical opinions or prior administrative findings." § 416.920c(b)(2).

The doctrine of harmless error applies to an ALJ's failure to comply with the articulation requirements of § 416.920c. *E.g.*, *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *3 & n.2, *4 (5th Cir. Jan. 18, 2023) (unpublished) (analyzing under 20 C.F.R. § 404.1520c(b)[13] and citing *Shineski v. Sanders*, 556 U.S. 396, 407–08 (2009) (holding that the harmless error doctrine applies to administrative rulings)); *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) (applying the harmless error doctrine to ALJ's articulation and evaluation of the persuasiveness of medical opinions under 20 C.F.R. § 404.1520c); *Bischoff v. Bischoff*, No. 22-16022, 2023 WL 5319251, at *1 (9th Cir. Aug. 18, 2023) (unpublished) (mem.) ("[E]ven if the ALJ erred in failing to provide a more detailed explanation about the 'supportability' and 'consistency' of any of the medical opinions, any error was harmless." (analyzing under 20 C.F.R. § 404.1520c)).

An error is harmless "unless the substantial rights of a party have been affected" by the error. *Rollins v. Astrue*, 464 F. App'x 353, 358 (5th Cir. 2012) (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)). "Where the resulting disability determination remains unchanged, . . . no substantial rights have been affected." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009) (citing *Mays*, 837 F.2d at 1364).[14] The burden is on the plaintiff to show that the ALJ's error was "prejudicial"—that is, the error affected his substantial rights. *Jones v. Astrue*, 691 F.3d 730, 734 & n.6 (5th Cir. 2012); *see also Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001)

---

[13] As previously mentioned, the relevant regulations governing the determination of disability under a Title II claim are identical to those governing the determination under a Title XVI claim. Sections 404.1520c and 416.920c are likewise identical.

[14] *See also Keel*, 986 F.3d at 556 ("Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err.").

("This [c]ourt requires . . . a showing that the claimant was prejudiced by the agency's failure to follow a particular rule before such a failure will be permitted to serve as the basis for relief from an ALJ's decision.").

## A. The ALJ's Persuasive Analysis of Dr. Brown's Findings

Dr. Brown reviewed the case record at the reconsideration stage and based on that review, provided his opinions regarding his step three evaluation of Acosta's impairments utilizing the psychiatric-review technique described in 20 C.F.R. § 416.920a and further provided his opinions about Acosta's mental RFC. Tr. at 78–80, 83–87. In assessing Acosta's RFC, the ALJ recounted Dr. Brown's findings about Acosta's limitations and then stated that "[t]his opinion is persuasive and consistent with the treatment record from Emergence Health Network" ("EHN"). *Id.* at 28.

Pointing out that in his persuasive finding, the ALJ "specifically noted" that Dr. Brown's opinion was "consistent" with the EHN treatment records and that elsewhere in his decision, the ALJ discussed the treatment notes from EHN, the Commissioner argues that the ALJ adequately explained the consistency factor for Dr. Brown's opinions—"even though this discussion [of the EHN records] did not occur immediately after the ALJ's statement regarding consistency." Def.'s Resp. Br. at 9–11. The Court agrees.

Throughout his written decision, the ALJ discussed various EHN treatment notes, which are dated both before and after Dr. Brown made his findings on May 20, 2021.[15] Based on these notes, the ALJ noted that since well before his disability onset date, Acosta had been treated for ADHD, disruptive mood dysregulation disorder, unspecified neurocognitive disorder, and

---

[15] *E.g.*, Tr. at 24 (citing Exs. 4F, 10F, 14F); *id.* at 26 (citing Ex. 14F); *id.* at 27 (citing Exs. 6F, 4F, 10F, and 14F).

intermittent explosive disorder, and that Acosta's medication included Vyvanse, Abilify, and Clonidine.  Tr. at 24, 27.  He observed that "[t]hese records [from EHN] show waxing and waning of symptoms and general effectiveness of medication[s]."[16] *Id.* at 27.  In support of that observation, the ALJ cited multiple EHN treatment notes.[17]  Therefore, the Court can reasonably infer that the ALJ determined that Dr. Brown's opinions are consistent with the EHN treatment records in part because Acosta's functional limitations assessed by Dr. Brown are consistent with his observation that Acosta's symptoms, which wax and wane, are generally controlled by medication.[18]  The Court therefore finds that the ALJ adequately explained the consistency factor for Dr. Brown's findings.[19]

Turning to the supportability factor, the Commissioner concedes that the ALJ did not specifically discuss the supportability of Dr. Brown's findings (as well as the findings of the other two consultants) but argues that under the particular circumstances of this case, the ALJ's consistency analysis also serves as an adequate explanation of the supportability factor.  *See*

---

[16] This is an inference the ALJ drew from the EHN records.  As such, the Court disagrees with Acosta's characterization of the ALJ's discussion of the records as a "rote" recital of the evidence.  Pl.'s Reply Br. at 2.

[17] For example, the ALJ wrote that in January 2020, Acosta reported that he was compliant with medication, *id.* at 27 (ALJ citing Ex. 10F); *id.* at 1081 (Ex. 10F, p. 8); that in May 2020, Acosta denied depression but had anxiety "at a level of 2 [*sic*] out of 10," *id.* at 27 (ALJ citing Ex. 6F); *id.* at 965 (Ex. 6F, p. 7) (the cited exhibit says, "anxiety 3 of 10," Tr. at 965, but the ALJ committed a typographical error in writing "at a level of 2 out of 10"); and that in September 2021, Acosta denied any depression and anxiety and reported that he was doing well, *id.* at 27 (ALJ citing Ex. 14F); *id.* at 1226 (Ex. 14F, p. 7).

[18] *Cf. Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) ("If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability.").

[19] *Cf. Belk v. Colvin*, 648 F. App'x 452, 454–55 (5th Cir. 2016) (looking to ALJ's discussion of the medical evidence "in a different part of her decision" to assess whether the ALJ provided adequate explanation of his findings at step three); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 456–57 (6th Cir. 2016) (looking to ALJ's detailed discussion of treatment records "[e]lsewhere in her decision" to assess whether the ALJ adequately explained why she found that a treating physician's opinion was "not consistent with the past treatment records").

Def.'s Resp. Br. at 9 ("[A]n explanation of internal consistency is an adequate rationale for supportability. . . . In this case, it was not improper for the ALJ to not specifically discuss supportability."). This is so because, she explains, the state agency consultants issued their opinions based on the review of the record evidence and not based on any examination findings from any examination of their own as they did not examine Acosta but only reviewed the record evidence. *Id*.

Although the articulation regulation requires that ALJs must explain how they considered the supportability and consistency factors, 20 C.F.R. § 416.920c(b)(2), and although ALJs have been encouraged to use the words "'consistent' and 'supported'—with precision" so as to "avoid confusion," *Woods v. Kijakazi*, 32 F.4th 785, 793 n.4 (9th Cir. 2022), the regulation does not say that the ALJ must explain his consideration of these two factors separately, *Lavinia R. v. Saul*, No. CV SAG-20-1083, 2021 WL 2661509, at *3 n.1 (D. Md. June 29, 2021) ('While the newer regulations plainly require ALJs to consider both consistency and supportability, the regulations do not expressly require that an ALJ consider the factors in a standalone sentence or paragraph." (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2))). And the Fifth Circuit has long rejected the notion that an ALJ must "follow formalistic rules in his articulation" of his findings. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). Moreover, courts have noted "the inherent lack of clear delineation between supportability and consistency when an ALJ evaluates the opinion of a reviewer, like a state agency physician," in particular, where there has been little or no change to the medical evidence of record between the time the state agency physician issues his finding and the ALJ issues his decision. *E.g.*, *Elaine S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-240, 2023 WL 2623575, at *4–*5 (S.D. Ohio Mar. 24, 2023) (citing illustrative cases).

Dr. Brown was required to "consider the evidence" as existed in the case record at the time he made his findings, 20 C.F.R. § 416.913a(1), and as best as the Court can discern, the record at that time included Exhibits 1F through 10F—of those exhibits, Exhibits 4F, 6F, and 10F are from EHN.[20] In his statement of findings, Dr. Brown predominantly cited from the EHN treatment notes. *See* Tr. at 79–80.[21] As mentioned above, in making the persuasiveness determination, the ALJ stated that Dr. Brown's opinions are "consistent"[22] with the EHN treatment records, *id.* at 28, and in assessing Acosta's RFC, the ALJ discussed, among other medical records, the same EHN treatment notes that Dr. Brown cited, *id.* at 27 (citing among others, Exs. 6F, 10F). Therefore, "the ALJ's discussion of [Dr. Brown's] findings can be understood to touch upon both consistency and supportability." *Cf. Elaine S.*, 2023 WL 2623575, at *5. In sum, the Court finds no error in the ALJ's articulation of how he considered the supportability and consistency of Dr. Brown's findings.

Moreover, even if the ALJ erred in articulating the supportability and consistency of Dr. Brown's findings, the question remains whether the error was harmful. Acosta argues that as a result of the error the ALJ's formulation of the RFC failed to include certain limitations that are

---

[20] By the time of the ALJ's hearing, the record included Exhibits 1F through 13F, Tr. at 28, and subsequent to the hearing, but before the ALJ's decision, Acosta submitted Exhibit 14F, *id.* at 40–41, 1220. Of these exhibits, Exhibits 4F, 6F, 10F, and 14F include medical records from EHN.

[21] Dr. Brown did not specifically mention the treatment notes by their exhibit numbers, though he noted the date of the notes and narrated information therefrom. The Court has reviewed the record to locate the notes by their dates and the corresponding information. *E.g., id.* at 1029 (note dated Sept. 2010; Ex. 6F); *id.* at 1088 (note dated Jan. 2021; Ex. 10F); *id.* at 1090 (note dated Feb. 2021; Ex. 10F); *id.* at 1092 (note dated Mar. 2021; Ex. 10F).

[22] *See Rules and Regulations: Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5854, 2017 WL 168819 (SSA Jan. 18, 2017) (stating that the word "consistent" as used in the regulations means "whether the evidence conflicts with other evidence from other medical sources and whether it contains an internal conflict with evidence from the same medical source").

supported by the evidence. Pl.'s Br. at 14, 16. As mentioned, Acosta has the burden to show that he was prejudiced by the error.

Acosta points out that both Dr. Drake and Dr. Brown found that Acosta had moderate limitations in the ability to maintain attention and concentration; that several treatment notes indicate that he has only fair attention and concentration with some distractibility; that a 2018 individualized education plan prepared by Acosta's high school includes a notation that Acosta "needs constant re-direction being that he gets off task quite often," and that several treatment notes also indicate that he has "constant need of repetition and redirection for better understanding." Pl.'s Br. at 16 (citing, among others, Tr. at 65, 865, 314, 1085). Based on them, he argues that additional limitations regarding supervision or redirection should have been included in the RFC. *Id.*

However, the ALJ discussed, and the record contains, other evidence that tends to undercut the weight of the evidence Acosta cites here. At step three, the ALJ found that Acosta has a moderate limitation in the area of concentrating, persisting or maintaining pace but also noted that at the hearing Acosta testified that he plays videogames, which require concentration. Tr. at 25, 50–51. The ALJ discussed and cited medical records relevant to his concentration and attention span: For example, the ALJ penned that Acosta was being treated for "ADHD," *id.* at 25; that he "was noted to have attention span and concentration within normal limits" during a visit with his doctor in June 2021, *id.* at 25 (citing Ex. 14F), and that his 2018-2019 individualized education plan identified that he had "good attention span," *id.* at 27 (citing Ex. 3F, 13F). Moreover, both Dr. Drake and Dr. Brown opined that Acosta's ability to sustain an ordinary routine without special supervision is not significantly limited. Tr. at 65–66, 85. Thus, Acosta's arguments invite the court to reweigh evidence, which it may not do. *See Nasser v.*

*Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *2 (6th Cir. Dec. 1, 2022) (unpublished) (viewing the argument that the ALJ incorrectly applied 20 C.F.R. § 404.1520c as a "veiled attempt to have us reweigh the evidence"); *Miller*, 2023 WL 234773, at *4 ("Miller is essentially asking us to reweigh the evidence to show that she was prejudiced by the ALJ's failure to explain, which we cannot do.").

Moreover, the ALJ's RFC formulation recites that Acosta "can understand, remember and carry out simple work instructions," Tr. at 26, and as such, the RFC adequately accounts for Acosta's deficiencies in concentration, persistence, and pace. *See Nixon v. Barnhart*, 49 F. App'x 254, 256 (10th Cir. 2002) (holding that the ALJ's RFC assessment that claimant cannot perform tasks requiring understanding, remembering, or carrying out more than simple instructions adequately accounts for the claimant's deficiencies in concentration, persistence, and pace); *see also* 20 C.F.R. § 404, Subpart P, App. 1, § 12.00E (The metal functioning area of "concentrate, persist, or maintain pace" "refers to the abilities to focus attention on work activities and stay on task at a sustained rate"; examples include "working a full day without needing more than the allotted number or length of rest periods during the day.").

Finally, Acosta points out that Dr. Brown opined that Acosta "appears capable of working a full time SRRT job,"[23] *i.e.*, a job involving simple, routine, repetitive tasks, Tr. at 87, and complains that the RFC does not mention a limitation to routine, repetitive tasks, Pl.'s Br. at 14 (citing Tr. at 87). It appears that the ALJ's RFC formulation implicitly incorporates the SRRT limitation as part of the explicitly stated limitation that Acosta "can understand, remember and carry out simple work instructions." *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 210 (3d

---

[23] This statement by Dr. Brown appears in a section entitled, "MRFC – Additional Explanation," which is reserved for "[a]ny other assessment information deemed appropriate." Tr. at 84, 87.

Cir. 2019) ("A limitation to 'simple tasks' is fundamentally the same as one to jobs requiring understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions."); *see also Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (In assessing residual functional capacity, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."); *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("[T]here is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim" in the RFC.).

In any event, any error in not adopting the SRRT limitation verbatim or explicitly in the RFC, and in turn, any § 416.920c error in not adequately explaining the ALJ's consideration of Dr. Brown's opinions that might have led to this non-adoption were nevertheless harmless. Courts have held that a SRRT limitation is consistent with the demands of jobs requiring Level 2 reasoning, which under the *Dictionary of Occupational Titles*' definition, requires a worker to, *inter alia*, "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." Dep't of Labor, *Dictionary of Occupational Titles*, App. C. 1991 WL 688702 (4th Ed. 1991); *see also e.g.*, *Lawrence v. Saul*, 941 F.3d 140, 144 n.8 (4th Cir. 2019) (finding "no apparent conflict between 'simple, routine, repetitive' and Level 2 reasoning (collecting illustrative cases)); *Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *6 (11th Cir. Jan. 10, 2022) (unpublished) ("There is no apparent conflict between a limitation to simple, routine, repetitive tasks and a requirement to carry out detailed but uninvolved instructions."); *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (holding a limitation to "simple, repetitive and routine work" is consistent with the demands of Level 2 reasoning).  And two of the three available jobs the ALJ identified at step five require Level 2 reasoning.  *See Dictionary*

*of Occupational Titles*, *supra*¸ § 732.687-042, 1991 WL 679885 (lining inserter) (requiring Level 2 reasoning); *id.* § 920.687-078, 1991 WL 687980 (crate liner) (same).

Consequently, had the ALJ adopted verbatim or explicitly in the RFC the SRRT limitation assessed by Dr. Brown, the ALJ's step five finding that Acosta can perform other jobs would have remained unchanged.  *See Lane v. Colvin*, 643 F. App'x 766, 769 (10th Cir. 2016) (finding harmless an error on the part of the ALJ for not expressly including in the RFC a limitation assessed by state agency consultant because the capacity required to do the jobs identified by the ALJ at step five is not contrary to the consultant's limitation); *James v. Kijakazi*, No. 21-35586, 2022 WL 1302148, at *2 (9th Cir. May 2, 2022) (unpublished) ("Where an ALJ fails to include a credited limitation in the RFC, the error is harmless if that limitation would not preclude performance of the jobs identified in step four or five." (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008))).[24]

In sum, the Court finds that any error on the part of the ALJ in not adequately articulating the supportability and consistency of Dr. Brown's findings as required under § 416.920c was harmless.

**B.   The ALJ's Persuasive Analysis of Dr. Drake's Findings**

Dr. Drake reviewed the case record at the initial stage of the administrative proceedings and based on that review, provided his opinions about Acosta's mental RFC.  Tr. at 64–67.  In his written decision, the ALJ mentioned the limitations found by Dr. Drake and then stated only

---

[24] *See also Pennington v. Comm'r of Soc. Sec.*, 652 F. App'x 862, 874 (11th Cir. 2016) (holding even if the ALJ erred in failing to include a fine-manipulation limitation in her hypothetical to vocational expert, the error would have been harmless because even with the limitation, the claimant would be able to perform one of the three jobs identified by the ALJ at step five); *cf. Reynolds v. Kijakazi*, No. 21-35672, 2022 WL 4095381, at *2 (9th Cir. Sept. 7, 2022) (unpublished) ("[E]ven if a depth-perception limitation should have been included [in the RFC], this error was harmless because two of the available jobs that the ALJ identified did not require depth perception.").

that Dr. Drake's "opinion is consistent with the record and is persuasive." *Id.* at 28. The ALJ did not cite to any specific record evidence in support of that statement, nor did he provide further explanation. So, the Court agrees with Acosta that the ALJ's explanation is deficient for purposes of § 416.920c. *See* Pl.'s Br. at 12.

Nevertheless, a comparison between Acosta's mental RFC assessed by the ALJ and that assessed by Dr. Drake reveals that the limitations the ALJ incorporated are either the same as or more restrictive than those found by Dr. Drake. *Compare* Tr. at 26, *with id.* at 64–67. As such, the ALJ's § 416.920c error was harmless. *See, e.g.*, *Baker o/b/o Baker v. Berryhill*, No. 1:15-CV-00943-MAT, 2018 WL 1173782, at *4 (W.D.N.Y. Mar. 6, 2018) ("Remand is generally not warranted where the ALJ's RFC finding is more restrictive than the limitations set forth in the medical opinions of record, inasmuch as any alleged error in this regard inures to the claimant's benefit."); *Griffin v. Kijakazi*, No. 2:22-CV-57-DCP, 2023 WL 3573734, at *11 (E.D. Tenn. May 19, 2023) (finding that "any error by the ALJ in failing to sufficiently articulate the consistency and supportability factors was . . . harmless for another reason, namely, that the ALJ imposed greater limitations than those opined by the state agency medical consultants").

## C.  The ALJ's Persuasive Analysis of Dr. Rowley's Findings

Dr. Rowley reviewed the case record at the reconsideration stage of the administrative proceedings and based on that review, provided her opinions about Acosta's physical RFC. Tr. at 81–83. She found that Acosta had no exertional limitations and that he had only the following non-exertional, environmental limitations:[25] he must avoid concentrated exposure to hazards such as unprotected heights and heavy machinery. *Id.* at 82–83. The ALJ found Dr. Rowley's

---

[25] Environmental limitations pertain to a claimant's ability to work with "hazards such as unprotected elevations and dangerous moving machinery" and his ability to tolerate "extremes of temperature, noise, . . . vibration, . . . fumes, dust, and poor ventilation." SSR 85-15, 1985 WL 56857, at *8 (SSA 1985).

opinion as to environmental limitations was "persuasive," but provided no explanation. *Id*. at 28. However, as the Commissioner points out, *see* Def.'s Resp. Br. at 12, the ALJ ultimately adopted all of Dr. Rowley's opinions in formulating Acosta's physical RFC: that Acosta can perform a full range of work at all exertional levels but that he cannot tolerate exposure to workplace hazards or unprotected heights, Tr. at 26. Consequently, regarding Dr. Rowley's medical findings, the ALJ's failure to provide adequate explanations as required by § 416.920c was harmless.

## V.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**So ORDERED and SIGNED this  19th  day of September 2023.**

_____
**ANNE T. BERTON
UNITED STATES MAGISTRATE JUDGE**